The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to get their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to have you with us today, even remotely, and we'll hear our first case number 1973-40, Moss v. Harwood. Mr. Corzine. Yes, may it please the Court, Judges Motz and Diaz and Harris. So, I'm John Corzine from the Wake Forest Clinic and under Local Rule 46, it's my pleasure to introduce to the Court the two third-year student counsel who will argue this morning. First, Ms. Sarah Keller will address the first issue on exhaustion administrative remedies and then Ms. Ciara Weingartner will address the second issue on deliberate indifference to serious medical needs. Thank you very much. Thank you. Good morning. First issue today is whether Eric Moss was prevented from exhausting. The defendants repeatedly prevented Mr. Moss from engaging the administrative grievance process and made Mr. Moss's administrative remedy unavailable. The lower court decision, which brings us here today, that Mr. Moss failed to exhaust his administrative remedies should be reversed for two reasons. First, Mr. Moss was denied access to grievance forms and cannot be held responsible for exhausting an administrative remedy if he is prevented from using that remedy. Second, Mr. Moss's use of another inmate to file a grievance on his behalf should not be held against him because an inmate is under no obligation to invent a novel method of grievance filing. For those two reasons, we respectfully request that this Court reverse the District Court's grant of summary judgment in this matter. First... But counsel, can I ask you, I take your point that another inmate can't be, I'm sorry, an inmate can't be required to find a workaround if prison officials are making it impossible to access a grievance system. But if he in fact does, how can we say that the grievance system was unavailable? I mean, it was literally available. He used it. He did file a grievance. Your Honor, in this instance, that grievance was filed for him on behalf of him by another inmate and that his PIN number for those fiascos was revoked as soon as that grievance was filed on April 22nd, which shows that this prison does not condone use of another inmate to file a grievance on your behalf as an appropriate administrative procedure to comply with the prison's policy of filing a grievance. It does seem to me that the prison, assuming that all the allegations here are true, the prison has done some things that might be the source of a separate claim. But are there any cases where a court has ever held that a grievance system is unavailable where the inmate in fact filed a grievance during the time in question and under the circumstances that he claims rendered the system unavailable? Has this ever happened? Your Honor, here that grievance was filed for him by another inmate. And again, that was not a sanctioned grievance procedure by... Understanding all of that, but a grievance was filed on his behalf under his name during the time period and under the circumstances that you say rendered that process unavailable. And I'm just asking, are there any cases where a court has ever held a grievance process was unavailable when in fact it was accessed? Your Honor, there are two cases out of this circuit, both Moore v. Bennett from 2008 and Hill v. O'Brien in 2010, when this court held that refusal to provide those grievance forms prevents the administrative remedy from being available. At Hill v. O'Brien case, a panel of this court held in 2010, that a prisoner's ability to take advantage of an administrative grievance is not an either-or proposition and that there are times when a remedy is clearly available, other times when it was clearly unavailable, and that there can be a middle ground in this case. That is what we have before the court today. That standard... So, I'm sorry, how is the grievance unavailable? Mr. Moss was consistently not provided access to the written paper grievance forms, which is required by the prison policy. The prison policy, Article 11, Provision 1, which is on page 167 of your point of comment, only lists paper forms as a proper grievance method. If Mr. Moss is going to be held to both the court and the policy, which defendants are attempting to do here, he must be given grievance forms in order to be in compliance with the four corners of that policy. So, going back to my colleague's question, was there a grievance that was properly filed in the paper form? There was a grievance filed through use of a kiosk by another inmate on Mr. Moss's behalf, but Mr. Moss himself was unable to file grievances during the time period. So, but you can see that there was a grievance that was complied with the prison requirements that was filed during this period on his behalf. Your Honor, there was a grievance filed at a kiosk by another inmate on behalf of Mr. Moss, but again, the kiosks are not listed in the jail policy as a proper means of filing grievance. This was an unreasonable request to ask Mr. Moss to create a game of telephone, and he was released, as you'll see on page 318 of the joint appendix, he was released from lockdown for one hour. I'm having trouble hearing you again. Maybe your voice drops away or gets blurred as you talk. I don't know what's the problem. I will move the computer again. Is that a little bit better? Yes, it's fine when you start out. Okay. Mr. Moss, according to page 318 of the joint appendix, was released from his lockdown for one hour. During that short period of time, Mr. Moss was then required to play a game of telephone to be able to get his grievance heard because his attempts to review the proper grievance process of filing a paper form were consistently denied, and that standard is what we're operating from here. It's consistent. Ms. Keller, can I ask a question? You keep referring to the kiosk as an unauthorized method of filing a grievance, but I mean, it was there for a reason, and it's being used by the inmates in the course of their daily lives, so why do you think it's unauthorized? As I understand it, those kiosks were, in fact, a method for filing a grievance, and prison officials responded to grievances that were filed via the kiosk. Yes, Your Honor, those kiosks were installed for convenience, and it is very hard to say that a kiosk can do 165 of 168 hours in a week, and Mr. Moss, again, had to, the only grievance that was filed during that time period from April 2nd to April 25th was a grievance filed on his behalf by another inmate. Mr. Moss was required to play a game of telephone in order to have his voice heard rather than being able to follow the normal requested prison procedures of requesting a paper form, signing it, and submitting it to a CO, as outlined in Article 11, Provision 1 of the prison's policy. Because Mr. Moss was unable to exhaust his administrative remedies, because those administrative remedies were unavailable to him, he cannot be held responsible to exhaust a remedy which he doesn't have access to and which is unavailable. As such, we respectfully request that you reverse the district court's grant of summary judgment in this matter. Before you sit down, I have a couple of questions. First, you concede that a grievance was filed on his behalf. Yes, Your Honor. I thought the prison authorities, and I'm sure they will correct me on this, said that he didn't comply, he didn't ask for a hearing. That seemed to be inappropriate. In that grievance on April 22nd, Mr. Moss needed to have his most urgent needs met. He was in extreme medical distress, which my co-counsel will speak to shortly. And because of the game of telephone that was required of him in order to file that grievance, he needed to find an inmate that he trusted, distribute his PIN, convey all of his needs to that inmate, and then trust that that inmate could convey all of those needs to the kiosk. That game of telephone required Mr. Moss to get his most urgent needs met first, which was his medical needs, which my co-counsel will speak to shortly. So he didn't ask for a hearing. That's all I was asking you. Correct, Your Honor. He did not ask for a hearing. So then under the prison's own theory, he didn't file a grievance because he didn't ask for a hearing. But you can also only have a real grievance if you have access to the administrative remedy. I understand. Thank you. Thank you. May it please the Court, I will be addressing the second issue, and that is whether the defendants were deliberately indifferent to Mr. Moss's serious medical needs, and they denied and delayed treatment for his thyroid disease and mental health disorders. Mr. Moss has put forth sufficient evidence to create a genuine issue of material fact for a claim of deliberate indifference under the Eighth Amendment. The test for deliberate indifference contains two parts. First, the objective prong requires the plaintiff to demonstrate an objectively serious medical need. Second, the subjective prong requires the plaintiff to prove that the defendants knew of and disregarded a substantial risk to the plaintiff's health or safety. Here, the defendants were deliberately indifferent to his thyroid disease and mental health disorders. Therefore, this Court should reverse the district court order granting summary judgment on Mr. Moss's claim to deliberate indifference. Turning to the first prong, a claim to deliberate indifference... Ms. Weingartner, sorry, can you just move a little closer to that computer? You know, you start off, as Mr. Moss mentioned to your colleague, you start off strong and then you fade as you go on, so it's hard to hear, and we want to hear you. No, I haven't done it. Sorry. A claim to deliberate indifference requires that the plaintiff establish an objectively serious medical need. In Cento v. Hansberry in 2016, this Court held that a plaintiff's serious medical need is one that has been diagnosed by a physician as mandating treatment. Here, Mr. Moss's thyroid disease, PTSD, ADHD, and major depressive disorders have all been diagnosed by Mr. Moss's treatment and required, as diagnosed by Mr. Moss's physician, he required treatment in the form of daily medication and continued follow-up care by a physician. This prong also requires that the defendant be deprived of adequate medical care that results in either a physical or emotional injury or a substantial physical or emotional injury. By withholding Mr. Moss's thyroid medication from March 4th to April 11th, when he finally received treatment at Mashburn Medical Center, he was without his thyroid medications for 38 days. At this time, Mr. Moss's physician proclaimed it was a wonder he was not in a coma because his thyroid levels were so high. Looking through the Joint Appendix, page 140... Ms. Weingardner, can I ask you about that? Did the prison officials know or the prison guards know about this issue regarding your client's condition, that he was almost in a coma as a result of the delay in receiving the medication? Yes, Your Honor. Despite the fact the defendants were non-medical personnel, they were put on notice that Mr. Moss had a thyroid disease and mental disorders. No, no, I get that. I get that. But you just referenced the comment from the doctor about how he was surprised that your client was almost in a coma because of the delay in receiving the medication. I'm asking you whether or not the prison officials knew that. Yes, Your Honor. It's documented in the Joint Appendix on page 146 that Mr. Moss informed the defendants of what Mr. Russo, the doctor, said in that case, and they were aware of that. But counsel, were they aware of it when they took the actions that allegedly led to the delay in providing medication? That would be the relevant time. Is there any allegation in this complaint that at the time the defendants did whatever it is they did that is being linked to the delay in medication, that at that time they understood that this was an emergency and that your client could go into a coma if he didn't get his thyroid medication immediately? Because the request didn't say anything about that. Judge Harris' question. Judge Harris, the defendants were put on notice as of March 4th that Mr. Moss had this thyroid disease and these mental health conditions. When he was without medication, that is what allowed his thyroid levels to raise or, for example, his PTSD and ADHD, his suicidal thoughts to worsen during that time. So that the defendants were put on notice as early as March 4th should have been their indication that Mr. Moss needed adequate medical treatment at that time. And then it is a common sense perception that his condition would have worsened without the requisite medication. So you're relying on just anybody ought to know that if there's a relatively short delay in getting thyroid medication, the results could be as severe as a coma. Because I would not have known that. Looking to Bryce v. Virginia Beach Correctional from 1995 in this court, a substantial risk can be inferred from circumstantial evidence or from the very fact that a risk was obvious. Here we have that Mr. Moss is without his medication for not short periods of time, but very long periods of time. And for his thyroid disease, it was 38 days without receiving medication. That's over a month. And for his mental health disorders, it was over two months on two separate occasions. And Mr. Moss' grievances show that he was suffering during that time and asking for help. I think very important to note out is that on page 319 of the joint appendix, the district court even notes that Mr. Moss is experiencing suicidal thoughts at this time. Certainly those are a worsening of his symptoms during this time and that he was attempting to inform the defendants of his worsening conditions without the medication. Can I ask you just, this is a somewhat unusual deliberate indifference case in that the defendants are not medical providers. They're just prison officials. And just even objectively speaking, what are the allegations that sort of tie these two defendants to the delay in getting the medication? I mean, what is it that they did that was wrong here? Your Honor, the defendants today are really the gateway to Mr. Moss' adequate medical care. There's a reliance on the defendant to not only provide Mr. Moss with access to the hospital, but also to pick up prescriptions once called in and to distribute them to Mr. Moss once they were in the prison administration's possession. For example, looking to page 190 of the joint Mr. Moss visited RHA on August 14th and took a follow-up call by his physician the next day on August 15th in order for the defendants to go pick up the prescriptions at the pharmacy and distribute them to Mr. Moss. And this shows that it's much more than just access to a hospital or two doctors, but there's additional elements of care that are required under this amendment. But once that call was made, they went ahead and picked it up, right? On that instance, yes, Your Honor, they did. But a separate instance shows on page 151 of the joint appendix that Dr. Russo noted that he had actually called in one of Mr. Moss' prescriptions a month prior and the defendants had simply failed to pick that up and all together. And so that's another instance of the defendant. But how do you distinguish that? I mean, it's clearly inattentive, perhaps negligent, but how does that amount to a deliberate indifference? I mean, they need to be aware of the risk and they need to consciously ignore the risk. And as your colleague on the other side points out, I mean, it was less than perfect and they responded, albeit at the snail's pace sometimes, but they did respond. So it just seems difficult for me to understand how that can rise to the level of deliberate indifference. Yes, Your Honor, if this was one instance of delay, that may be understandable, but here we have three separate instances of delay, one spanning one month, two instances of a delay spanning over two months. Looking at the Seventh Circuit 2013 case, Mago v. Mitchell, a reasonable jury could find that these pattern of delays resulted in deliberate indifference. But it's not just one instance of a few, it's a long-standing delay over months at a time where Mr. Moss did not receive adequate medical care. Counsel, I am confused now. It seems that you're referring to some delays that happened after suit was filed on April 25th, right? Yes, Your Honor. Well, why can we look at those? Those haven't, have those been the subject? I mean, they weren't the subject of a grievance. If they happened after suit was filed, were they? I mean, don't you have to do the grievance before you file suit? Your Honor, these grievances were addressed by the district court and so they are included with the grievances that this court should consider when determining if there has been delay or denial. I'm sorry, you want us to look at delays that happened after this lawsuit was filed? Yes, Your Honor. I mean, was the complaint amended? Your Honor, I cannot speak to that. I will address it in rebuttal. Okay. For the foregoing reasons, Appellant Mr. Moss respectfully requests that this court reverse the district court's order granting summary judgment and authorize the district court to appoint counsel on remand. Thank you. Thank you. Thank you, Your Honor. The police of the court, my name is Mike. I'm here. We can't hear you. Oh, we're having the same problem with you. So it must be us. The court, my name is Mike Ingersoll, and I'm here on behalf of Defendant Denton. I'm sorry, I'm here on behalf of Defendant Denton, Sheriff Harwood, and I'm sorry, this threw me off a little bit. Mr. Banks, go ahead. Mr. Banks, sorry. There are three primary issues here, which the court has clearly already addressed. My opposing counsel has obviously addressed them, but for roadmap purposes, I'll go ahead and lay this out. There are a couple of questions that the court did ask that I want to address initially. But first, obviously, there's whether Mr. Moss actually exhausted his available administrative remedies under the Prison Litigation Reform Act. The sub-issue there is clearly availability, which the court has picked up on. The second issue is his deliberate indifference claim. That claim is clearly based on a delay in the provision of medical care and not the denial of the provision of medical care. And the third is qualified immunity to the extent the court feels that defendants were actually deliberately indifferent. And that comes with its own sub-issue of whether a reasonable officer under the circumstances would have known that their conduct would violate his constitutional rights. I would like to open by addressing, under the exhaustion issue, a couple of questions that were asked. Judge Harris, Judge Moss, and Judge Diaz, you all asked a question regarding whether a third party filing grievances on behalf of Mr. Moss was proper under the grievance procedure. And what I will say is that that answer, I'll hit them very quickly. The overarching consideration, though, is that through the course of Mr. Moss's incarceration, he filed grievances from the date of March 16, 2018, which is about the time that he was booked, through August 23, 2018. And the number of grievances, medical requests, and law enforcement contacts that were filed during that time totaled 27. Specifically, there was one law enforcement contact. That was the March 16 submission. And then there were 26 other either medical requests or grievances that were filed by Mr. Moss. The critical date here, though, is April 25th of 2018. That's the date that Mr. Moss signed and submitted his complaint for filing. Prior to April 25th of 2018, he submitted six either law enforcement contacts, medical requests, or grievances through the jail's kiosk system. The jail does have a grievance policy. That's located at page 167 of the joint appendix. And if you turn to page 165 of the joint appendix, right before it, you'll see the declaration of Coy Phillips. Coy Phillips clearly states that the jail recognizes the kiosk as a recognized method of submitting grievances electronically to the jail. And that can be So that sets sort of the picture of what we're dealing with here. Mr. Moss clearly showed a preference for filing grievances and medical requests electronically because every single one that he filed with the jail was filed through the kiosk. It is only during this narrow window prior to him filing a suit on April 25th while he was in lockdown for the preceding 24 days that Mr. Moss now contends he needed handwritten grievance forms and was not provided them. So with respect to whether the third party is filing on his behalf, he has agreed to Mr. Gasol, can I ask just a factual question? So could he have access to kiosk while he was on lockdown? Could he personally have access to kiosk while he was on lockdown? Yes. Right. I do not know the answer to that offhand, Your Honor. I apologize. He was released for an hour per day, several times per week. Well, the prison has never stated in any of its papers or had anybody make an affidavit that he could access. That is correct, Your Honor. I think we have to take the record before us that he couldn't while he was on lockdown. Correct, Your Honor. And even operating on the assumption that he couldn't access the kiosk himself personally during lockdown, it doesn't erase the fact that as Judge Diaz observed, there were actual grievances that were filed. And there were grievances that were filed during this period. And with respect to the due process claim, which is what the exhaustion defense applies to, there was no, he never at one time raised the issue of his disciplinary hearing while on lockdown. He filed two grievances while he was actually locked down. But you see, this is what I don't understand. I thought what was hammered to us, actually, in your papers was that if you don't ask for a hearing, it's not a proper grievance. So then doesn't that defeat your argument that he files all these grievances because he never asked for a hearing? Let me be more specific, Your Honor. Thank you. And I will clarify. He filed grievances for other issues. He did not file a grievance related to disciplinary hearings, which would give rise to the due process claim. He actually did not raise any issue with his disciplinary hearing until he filed his complaint on April 25th. The complaint is the first place where any complaint regarding his disciplinary hearing appears. And then the only grievance or the first time he filed a formal grievance with the jail regarding his disciplinary hearing was almost a month later on March 24th of 2018. Well, of course, he says he was prevented from doing this. And so it's hard for me. You kind of bear ships passing in the night on this. You seem to think that's important that he didn't ask for a hearing and that he didn't file the formal grievance. He said he wasn't permitted to do that. So maybe talk to me. Thank you, Your Honor. Yes. Yes. So he filed. He filed obviously several grievances before he filed his complaint. Like I said, he filed 27 total while he was. But I thought you didn't regard those as real grievances. We don't regard grievances for one purpose, but not for another. Correct, Your Honor. He did not file a grievance with respect to the due process claim. He didn't complain about his. The lack of a disciplinary hearing that matters. Counsel, counsel, I'm very confused now. Your claim, you concede that he filed a proper grievance on his medical treatment claim, correct? He didn't ask for a hearing on it, but it didn't matter. That was a proper grievance on the medical treatment claim that he filed while in lockdown, right? Yes. Yes, Your Honor. Joint Appendix 175 was a proper grievance regarding his medical treatment. OK. And so your argument is he grieved one of his claims, but not the claim about the failure to give him a disciplinary hearing, which he did grieve, but only after he filed suit. Is that what you were saying? Yes, Your Honor. Thank you for the clarification. Our exhaustion defense applies only to the due process claim, which is related to his disciplinary hearing. But you are conceding he 100 percent properly grieved that medical claim. Well, no, as a matter of fact, we're not conceding that. We just didn't raise it to the trial court. I don't believe it's at issue here on this appeal. However, factually, there are multiple steps to the grievance process. He completed the initial grievance was fine, but he but he filed suit too soon after he grieved it. But you've you've you've waived all of that. Yes, Judge Harris, absolutely. But the initial when he got allegedly someone else to go to that kiosk with his pen and say, I'm grieving my medical, the denial of my medical care, that initial grievance, that was fine. Yeah, I'm sorry. He did that one. I accept one of the grievance policies of medical court. But I thought your brief was that you had to have this in writing and nothing ever was in writing. And it wasn't. And it didn't work. And ask for a hearing. You had to ask for a hearing. So where why am I so confused? Let me read you from your brief. No, no, no, Your Honor. Let me let me explain. So you are correct. He did not file a proper grievance with respect to the due process claim. What about the medical claim? Did he ask for a hearing there? No, he did not ask for a hearing. What about all this stuff in your brief about you have to ask for hearing? In order to have a grievance. Maybe I've misread your brief. So is that not your position? I don't I don't believe you misread the brief. I believe I've done a poor job of explaining it here today. Let me let me explain with respect to how this ties in, how the failure to grieve his due process claim ties in to third parties filing other grievances on his behalf. If you would give me one moment. Mr. Moss on page 11 of his opening brief states that the prison or the jail, excuse me, thwarted his attempts to exhaust his administrative remedies. Four main points on that. Every single grievance had his name on it. As Judge Diaz observed, every single grievance was submitted via use of his pen at his direction. Every single grievance also included any content that he directed those third parties. I believe Miami and Tennessee were their names. It included any and all content based on the record that he wanted included in those grievances. And he chose not to grieve anything related to a disciplinary hearing. The record is devoid of Mr. Moss asked Miami and Tennessee or some other unknown third party to submit a grievance via the electronic kiosk on his behalf using his pen under his name. And yet they didn't include everything he asked them to include in it. Counsel says it was that he focused only on his most pressing issues, his medical issues, which I'll get to in the deliberate indifference section. But there's nothing in the record and the burden is on Mr. Moss now that we've raised the deliberate indifference defense, or excuse me, that we've raised the exhaustion defense to show that he did properly exhaust. Mr. Moss has submitted nothing and there's nothing in the record indicating that anything he asked any third party to submit on his behalf from a content standpoint in these grievances or medical requests was not included in those grievances. So the grievances and the medical requests that he did manage to file that were filed on his behalf by third parties prior to filing suit and again at any point afterwards to the extent they're relevant, which we don't think they are, they all included every word that he wanted included. So the characterization of this as a game of telephone is really a distinction without difference. And whether a third party is permitted to submit grievances under the Prison Litigation Reform Act on behalf of another pretrial detainee such that that pretrial detainee has exhausted his available administrative remedies and that those administrative remedies are available to him in the first place, that's a form over substance position. The fact of the matter is, the practical facts are, there were over two dozen grievances or medical requests that were filed. There were several that were filed directly before the point that he filed his lawsuit and none of those prior to filing his lawsuit included any complaint regarding his disciplinary hearing. Okay. We have his testimony on what happened, right? But you can't ignore, right? He asked defendant Banks for a disciplinary hearing and Banks said, I'll play this. Plaintiff asked defendant Banks and Harford for access to the kiosk to request medical treatment and grievance procedures, but he was absolutely not your SIC on lockdown. Now, as of April 25th, plaintiff was still on lockdown, officers refused to bring in grievance forms and he was not allowed on the kiosk to submit grievances and medical requests. He gave a sworn statement about all this. So what do we do with that? If that's true, he's got a case, right? Well, if something is true, he would have, he requested that he had access to the kiosk in order so that he personally could file a grievance with respect to disciplinary hearing. Based on that testimony, accepting that as true, that happens. It doesn't negate- For access. He doesn't say that I personally would have access. He says that he asked them to get on the kiosk so he could request medical treatment and grievance procedures, but he was told absolutely not, you're on lockdown. He asked for a disciplinary hearing and Banks said, I'll pray for you. Do we just decide that he's not credible? Will you decide that? Your Honor, the line of work cases that Mr. Moss cites in his briefing is directly relevant to this. The issue is whether his efforts to file these grievances were thwarted by the jail conduct. They clearly were not thwarted. The end result was that the grievances were filed. They were filed under his name. They were filed with all the content we have to assume that he wanted included in there. No, no. Counsel, just a minute ago, you said, yes, grievances about his medical care were finally filed, but that he never asked for a disciplinary hearing. That's been your consistent argument. He says he did. Yes, Your Honor. And he did not take the opportunity, though he was filing grievances and having others file them on his behalf, and they were filing exactly what he was asking them to file. He did not also ask them to file any language in any of those grievances regarding disciplinary hearings. But he didn't have to do that, I guess, at another time. I mean, you can't be like a regular lawsuit and you would say to opposing counsel, well, you have to make this argument second. You can't make it fifth. He controls when he makes it. He did ask them and they said, I'll pray for you or that you absolutely would not. They would absolutely not do this because he was on lockdown. He's done all he can do. He's been denied the access. Well, not necessarily, Your Honor. Mr. Moss sites. Let me let me let me rephrase. There is a case out of the Middle District of North Carolina. The case site is it's not it's not cited in our brief. It's 2010 WL two four seven one nine zero six. That is the Rogers v. Davidson County Detention Center case. In that case, Judge Flanagan out of the Middle District in North Carolina found that because because the inmate or the inmate plaintiff filed a federal lawsuit only four days after he submitted a grievance regarding the basis of that lawsuit. That number one, he clearly had the administrative remedies available to him because number one, he filed a grievance. And number two, he chose to file the federal lawsuit instead and have to live with the consequences of that decision. There's another case, Hardy v. Turner, 2011 WL two one seven three six two four stands for the same proposition. Counsel, let me if I can just back you up a little bit. I mean, I think I understand the upshot of your argument. It's that we'll accept everything he said, all of the allegations. They wouldn't give him forms. They wouldn't let him personally access the kiosk. But the grievance process was available anyway, because he was able sort of heroically to figure out this work around and get someone else to do it for him. And doesn't that strike you as just a little bit counterintuitive that like the prison could have said also, like, you know, we're going to keep you in your cell. You can't talk to anyone. We're going to make sure you also have a third party do it. But he manages to like throw a note out the window. I mean, I'm talking now from stupid movies, but, you know, he attaches it to a pigeon and it gets to another inmate. And now the inmate files the grievance. How is that grievance system available to him? I mean, the prison officials have done everything they can to thwart his access. It is the fact that sort of he's a superhero and can figure out some way around it. It's a bit counterintuitive to say, OK, so no harm done. We're all fine here. Well, Your Honor, I would just I would respectfully disagree that the prison did everything they could to possibly thwart him from accessing the system. If they wanted to thwart him from accessing the system, they could have cut off his kiosk access at some point before July of 2018, which is the point at which they did cut off his access. That's Joint Appendix 137, which is cited also in Mr. Moss's reply brief at page six. So they wait. It was not until July, well after he was released from lockdown, that his kiosk access was actually shut off. Counsel also cites the Hill v. O'Brien case, which is commensurate with the Hardy decision. And the Hill v. O'Brien case and the Hardy decision, that line of cases deals with efforts by the jail staff to make misrepresentations, to make misleading statements towards inmates or to altogether. Let me go ahead. Let me try to rephrase my question. Say that Mr. Moss had not figured out this workaround and were accepting all of his allegations. They denied he asked for a written grievance form. He says, I can't get out of my cell to use the kiosk. I need the written forms. They say you can't have the written forms. You know, good luck. And he doesn't figure out a way to file a grievance. Would you still be here saying the grievance system was available to him? He should have figured out a way around the roadblocks we threw up? Or is this just sort of a happy fortuity for the prison system that, you know, you guys are just lucky he figured out a way. But had he not figured out a way, you would have had to concede you guys thwarted his access to the system. Do you see what I'm saying? If he absolutely was unable to file any grievance whatsoever through any means, yes, we would have thwarted his. No, no, I'm saying what if his allegations were exactly what they are here. And in fact, while he was on lockdown, he had not filed any grievances. Under those circumstances, we likely would have. We would have, quote, thwarted his efforts with and I but I want to I do want to make the caveat that under the O'Brien case, under that line of misrepresentation and cases, the the inmate has to receive that conduct. That kind of has to be bestowed upon them. They have to be threatened. They have to be misled. Misrepresentation has been made to them. And the inmate has to actually believe that their efforts are thwarted and that there is no possible way that they can file a grievance. That is clearly not the circumstance here because. No, I understand. But I think your concession is wise in my hypothetical. If he was alleging I wasn't allowed to use the kiosk, I asked for forms, they wouldn't give me any forms. And that's why I didn't file any grievances. We would have a very different case. Yes, your honor, I agree. And it looks like my time is up. I'm happy to answer any questions. Otherwise, I will yield my time. Actually, just wait a minute. Judge Diaz, do you have a question? I don't. Thank you. Judge Harris. Okay. Thank you very much. I appreciate your time. Thank you, your honor. May it please the court. Your honors, I have two issues to raise on rebuttal. The first is that the defendants have the burden to show that they complied with their portion of the administrative policy. The defendants provide no evidence. Their sole witness does not provide any testimony, nor do they provide any affidavits to the effect to rebut Mr. Moss's assertion that he was denied access to his administrative remedies. This court held... I'm sorry, counsel. Can I ask you a question about the record? And I'm sorry to sort of take you in a weird direction. But it does seem, I wonder whether this claim maybe doesn't work as an exception to exhaustion. But it does seem like on these allegations, the prison nevertheless did not comply with its policy and try to, assuming the allegations are true, try to deny access to its grievance system. It's just that it was unsuccessful. And that that might be a standalone claim. But it looks like maybe there was a standalone claim. You violated my due process rights by trying to stop me from using the grievance system. And that was dismissed. And that is not on appeal. Is that what happened? Your Honor, the due process claim is something that we would request to be considered at the district court level. However, here, in order to be able to get back to the district court, we would request that you find today that he was denied access... No, you're misunderstood. I'm sorry. And maybe I wasn't clear and I will only try one more time and then we can move on. I thought that at a very early stage of this litigation, the district court, I'm not talking about the denial of the hearing due process claim. There was a separate due process claim saying you also violated my due process rights, not by denying me the disciplinary hearing, but by trying to keep me out of the grievance system. And the district court, I think, dismissed that on frivolity review. And that is not before us. Is that right? That is correct. Okay. Your Honor, I see that I'm out of time on rebuttal. I'm sorry. 10 seconds to wrap up. Your Honor, I would like to point the court to the holding of the Supreme Court in 2016 in Ross v. Blake, in which the Supreme Court stated that the standard is consistent denial. When I was speaking to you previously, you had asked about the April 22nd grievance, which was filed on Mr. Moss's behalf by another inmate. The Supreme Court stated in simple dead end, with officers unable or consistently unwilling to provide any relief to a grieved inmate. And that is the standard that is being met in this case by Mr. Moss's consistent denial. Counsel, can I follow up on that citation? So was that Supreme Court case a case where notwithstanding the denial of access, which it seems on this record seems to have been made, that the inmate there actually was able to file a grievance? Or was that the kind of claims Judge Harris just asked you about, a due process claim for not allowing access? Your Honor, the Supreme Court outlined three different means of a remedy being unavailable to an inmate. And that was one of the three means on which the remedy was considered available to an inmate and then unable to be exhausted under the Prison Litigation Reform Act. I can get you those two other claims after completion of today's argument. Well, I was just asking a factual question as to whether or not that case is on all fours with this one, where you have a alleged denial of the access, but an inmate nonetheless is able to file grievances. That's not, that wasn't the, was that the, were those the facts in that case? Do you know? No, Your Honor, those were not the facts in that case, but this statement from the Supreme Court is persuasive here for you all. And I will pass it over to my co-counsel. May it please the Court. Appellant has two additional claims to rebuttal. And the first point is that when the District Court considers the grievances post-April 22nd, as it did for those grievances submitted in May, looking to page 332 of the Joint Appendix, and in August, looking to page 333 of the Joint Appendix, then the complaint has been amended by implication. An appellant will address this further in supplemental brief if the Court would like. Additionally, it should be noted that Mr. Moss is a pro se litigant at this time and some flexibility should be given to his pleadings. In addition, the second point on rebuttal is that this was not one short instance of a single delay, but rather three instances of delay, each spanning over one month, and two of those delays spanning over two months. In order for Mr. Moss to receive adequate medical care under the Eighth Amendment, he should be entitled to not only access to hospital treatment, but to also have his discretionary time spent on distributed time. For the foregoing reasons, appellant respectfully requests that this Court reverse the District Court's order granting summary judgment and authorize the District Court to appoint counsel on remand. Thank you. Thank you very much. We appreciate your arguments. We'll be here every week and go directly to our next case. Thank you, Your Honor.
judges: Diana Gribbon Motz, Albert Diaz, Pamela A. Harris